UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  
BANKRUPTCY JUDGE

(973) 645-4693  
Fax: (973) 645-2606

**FILED**
JAMES J. WALDRON, CLERK

FEB 06 2006

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

**NOT FOR PUBLICATION**

February 6, 2006

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Ravin Greenberg PC
Brian L. Baker, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
*Attorneys for Creditor Catherine Romania*

Booker, Rabinowitz, Trenk, Lubetkin,
 Tully, Dipasquale & Webster, P.C.
Mary Ellen Tully, Esq.
100 Executive Drive, Suite 100
West Orange, New Jersey 07052
*Attorneys for Debtor Nicholas A. Mattera*

Re:   In re Nicholas A. Mattera
      Case No. 05-39171 (DHS)

Dear Counsel:

Page 2
February 6, 2006

Before the Court is a motion filed by Catherine Romania (hereinafter "Romania") seeking to dismiss the Chapter 11 case of her former spouse, the Debtor, Nicholas Mattera (hereinafter the "Debtor"), or, in the alternative, requesting that the automatic stay be lifted in order to allow the parties to continue matrimonial proceedings in state court. The Debtor opposes the motion. For the reasons that follow, the request to dismiss the petition as a "bad faith" filing is hereby denied; however, the request for stay relief is hereby granted, and the parties are permitted to continue the ongoing divorce proceedings in state court in order for the state court to finalize its determinations with respect to the issues of alimony, child support, custody, determination of tort damages, if any, and equitable distribution of the parties' assets.

## I.    Factual Background

The Debtor and Romania, both of whom are attorneys, were married in 1981; five children were born during the marriage, several of whom remain minors. On September 24, 2001, the Honorable George E. Sabbath, Superior Court of New Jersey, Family Part ("State Court") issued an oral judgment of divorce followed by a written order of divorce on January 7, 2002. According to Romania, the state court entered the judgment of divorce "without determining all of the outstanding issues between the parties including custody, equitable distribution, child support and alimony, but ordered that amended dual judgments of divorce will be entered with respect to those remaining issues." (*See Memorandum of Law in Support of Motion of Catherine Romania to Dismiss Chapter 11 Case for Bad Faith Filing Pursuant to 11 U.S.C. § 1112(b), or, in the Alternative, to Lift the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)*, pgs. 1-2) (hereinafter "*Romania Br.*").

Page 3
February 6, 2006

The numerous conflicting allegations pertaining to the divorce proceeding evidence that it is an acrimonious, heavily contested action which has been pending in the state court for over six years. A trial was scheduled in the State Court to consider issues of purposeful dissipation of assets and diverting of money to law firm associates and the impact, if any, on the total equitable distribution that was to be awarded, as well as alimony, child support, custody and Romania's tort claims against the Debtor for filing false criminal complaints alleging Romania's interference with the Debtor's parental rights. (*Romania Br.*, pgs. 2-3). The Debtor filed his bankruptcy petition two days before the matrimonial action was set to commence, after Romania's attorney had the trial adjourned from July to September, 2005 and then sought a further adjournment to October, 2005. (*See Certification of Nicholas A. Mattera in Opposition to the Motion of Catherine Romania to Dismiss Chapter 11 Case for Bad Faith Filing Pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, to Lift the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)*, ¶¶ 57-58) (hereinafter "*Debtor Cert.*").

With respect to the occurrence of the Debtor's bankruptcy filing, Romania's argument is summed up as follows:

> The Debtor's bankruptcy filing is only the latest maneuver to frustrate [her] rights and ability to bring finality to the Family Court Litigation. The Family Court Litigation has been ongoing for approximately *six years*. The Debtor has attempted to thwart her discovery by using his business as a shield, having diverted clients, and revenues to his associates/friends. The Debtor filed his petition to gain a tactical advantage in the Family Court Litigation, at best, and at worst, is designed to shield or use marital property that would otherwise be awarded to her for the benefit of the Debtor's friends and other creditors the Debtor intentionally created in order to reduce the marital estate that would be awarded to her.

[(*Romania Br.*, pg. 3) (emphasis in original)].

Unsurprisingly, the Debtor contests these allegations and justifies the need for filing for bankruptcy as follows:

> Romania's motion to dismiss, although replete with hearsay, innuendo, and baseless allegations, provides no evidence of bad faith. My financial problems were exacerbated because the mainstay of my law practice is personal injury law. As a result of the passing of [New Jersey Automobile Insurance Cost Reduction Act], . . . the public distaste of lawsuits has grown. Today it appears that very few law firms concentrate solely in personal injury law. I have had to deal with this change in my practice at the same time that I have had to fund more than six years of litigation in state court and a *pendente lite* support order which is still in effect despite the fact Romania and I have been divorced for more than four (4) years. In sum, I filed my Chapter 11 petition to obtain the benefit of the automatic stay to afford me the breathing spell necessary to reduce my expenses and reorganize my obligations to creditors, including my obligations to Romania and our children.

[(*Debtor Cert.*, ¶¶ 61 and 65)].

Romania characterizes the Debtor's bankruptcy filing as a "two party dispute between former spouses and a cunning Debtor who has decided he would rather lose much of his wealth than to share it with his former spouse." (*Romania Br.*, pg. 8). In contrast, the Debtor asserts that the bankruptcy filing is much more than a two-party dispute, it includes at least thirteen other creditors holding approximately $720,139.41 in claims against the estate, and was precipitated, he alleges, by a deteriorating legal practice in financial trouble causing the fear lenders would call loans which were due and owing. (*Debtor Cert.*, ¶ 31 and ¶ 59).

Against this brief factual background, the Court will turn to its legal conclusions.

Page 5
February 6, 2006

**II.    Discussion**

    **A.    Motion to Dismiss as a "Bad Faith" Filing**

It is well-settled that Chapter 11 bankruptcy petitions are subject to dismissal under § 1112(b) of the Bankruptcy Code unless filed in good faith. Section 1112(b) of the Bankruptcy Code provides in pertinent part as follows: "[O]n request of a party in interest . . . and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause . . . ." *See* 11 U.S.C. § 1112(b) (West 2006). The statute lists ten non-exhaustive factors that may amount to "cause." *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004) (citations omitted). "Whether the good faith requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances' and determine where a 'petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'" *Id.* (citation omitted). The movant has the initial burden to present a *prima facie* case alleging bad faith; once achieved, the burden shifts to the debtor to prove that the petition was filed in good faith. *In re Walden Ridge Dev., LLC*, 292 B.R. 58, 62 (Bankr. D.N.J. 2003) (citations omitted).

The "good faith" requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy. *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119. As the Third Circuit Court of Appeals articulated in *In re SGL Carbon Corp.*:

Page 6
February 6, 2006

> A [good faith standard] furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. [The] requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way . . . .
>
> [ 200 F.3d 154, 161-62 (3d Cir. 1999) (citation omitted)].

The United States Supreme Court has identified two of the basic purposes of Chapter 11 as: 1) preserving going concern value; and 2) maximizing the property available to satisfy creditors. 384 F.3d at 119 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999)). Accordingly, the two inquiries that are particularly relevant to the issue of "good faith" pursuant to § 1112(b) is whether the petition: 1) serves a valid bankruptcy purpose, for example, by preserving going concern value or maximizing the value of the debtor's estate; and 2) is filed merely to obtain a tactical litigation advantage. *Id.* at 119-120. Notably, Chapter 11 filings arising out of a two-party dispute or triggered by state court proceedings do not *per se* constitute bad faith filings. *In re Walden Ridge Dev., LLC*, 292 B.R. at 62 (citing *In re Ravick Corp.*, 106 B.R. 834, 850 (Bankr. D.N.J. 1989)). Nevertheless, where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the evidence demonstrates that the filing for bankruptcy relief "is intended to frustrate the legitimate efforts of creditors *to enforce* their rights against the debtor, dismissal for 'cause' is warranted." *In re Ravick Corp.*, 106 B.R. at 844 (citing *In re Brandywine Assocs., Ltd.*, 85 B.R. 626 (Bankr. M.D. Fla. 1988)).

Page 7
February 6, 2006

In light of the equally competing submissions of the parties with respect to the issue of the alleged "bad faith" filing, this Court finds that Romania has not satisfied her *prima facie* burden of establishing "cause" pursuant to § 1112(b) of the Code. While not minimizing nor rejecting the evidence presented by Romania in support of her argument in this regard, the Court simply cannot conclude on the totality of the facts before the Court that the Debtor filed his petition in a "bad faith" attempt to deprive his former wife and children of the support and assets they may or may not be entitled to under state matrimonial law. In addition, Romania's argument that assets are held in trust and are not property of the Debtor's estate is without proof or evidential support. Certainly, no Order of the state court made such a finding. See Debtor's Cert. ¶ 15.

In contrast to the allegations raised by Romania, the Debtor has come forward with evidence that he owes a substantial sum of money to a variety of creditors, including lending institutions. While the Debtor's business decisions with respect to his law practice might be questioned, the facts show the law practice was in financial trouble. However, the Court is not convinced at this juncture that the Debtor is unable to reorganize his financial affairs and maximize value to his creditors. Most importantly, on the divergent record before the Court, the Court cannot conclude that the Debtor filed his bankruptcy petition solely as a litigation tactic in the pending State Action. While the timing of the petition was at the time of trial, that trial had been adjourned at the request of Romania and an additional adjournment was being sought into the Fall. Thus, it does not appear the Debtor filed his petition to avoid the trial of the State Action. Rather, the filing was effectuated at a time loans were in default and on the eve of the divorce trial that would have finally determined all of the outstanding financial obligations between the parties. Whether the trial is conducted by the state court or by this Court, either way the Debtor has to eventually litigate all of the outstanding matrimonial issues to

Page 8
February 6, 2006

completion. That cannot be avoided. For these reasons, the motion filed by Romania seeking to have the Debtor's petition dismissed under § 1112(b) of the Code is denied and abstention, as requested by Romania, is simply not appropriate under the facts in this case.

### B. Motion for Stay Relief

The observation that the Debtor must at this point litigate the outstanding matrimonial issues leads to Romania's alternative form of requested relief; namely, that the automatic stay be lifted to permit the state court "to decide and award equitable distribution, award support obligations, determine and award Romania damages on her tort claims, [and] award custody" of the parties' children. (*Romania Br.*, pg. 23). Significantly, during oral argument counsel for the Debtor acknowledged that an alternative solution would be for this Court to lift the automatic stay so as to permit the state court to determine the issues in the State Action, including an award for purposes of equitable distribution,[1] but sought to have this Court retain jurisdiction to apportion the assets as part of the Debtor's reorganization process.

Section 362(d) of the Bankruptcy Code provides in relevant part as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)   for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

---

[1] Issues regarding support obligations, alimony, and maintenance are not subject to the automatic stay pursuant to § 362(b)(1). See 11 U.S.C. § 362(b)(1) (West 2006). The equitable distribution of marital assets, however, is stayed by the filing of a bankruptcy petition. See 11 U.S.C. § 362.

Page 9
February 6, 2006

[11 U.S.C. § 362(d) (West 2006)].

The notion of "cause" under § 362(d) is "viewed as a broad and flexible concept." *In re The Score Board, Inc.*, 238 B.R. 585, 593 (D.N.J. 1999) (citation omitted). The court has the flexibility and the discretion to fashion the relief to the circumstances of the particular matter. *Id.* (citations omitted). On a motion to lift or modify the automatic stay, the burden of proof is a shifting one. That is, § 362(d)(1) of the Code requires an initial showing of "cause" by the movant, while § 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999) (citations omitted). It is well-settled that a basis for granting relief from the automatic stay for "cause" exists when it is necessary to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple non-debtor parties or is ready for trial. *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 130 (Bankr. D.N.J. 2004); *In re Telegroup, Inc.*, 237 B.R. at 87.

The legislative history to section 362(d)(1) supports this conclusion:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.
>
> [S. Rep. No. 95-989 at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.]

In determining whether to grant relief from the automatic stay so as to permit a party in interest to continue prosecuting a matter in another forum, courts will often rely upon the following factors: 1) whether

Page 10
February 6, 2006

relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms. *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 130 (citing *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 165 (Bankr. D. Conn. 2002)). *See also In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (utilizing same factors). All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay. *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 130 (citing *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 165).

This Court recognizes the special expertise of the state court Family Part in dealing with issues of alimony, support, custody, and equitable distribution. Under the facts herein, that expertise should be allowed to function. In addition, notions of judicial economy predominate this Court's decision to lift the automatic stay and permit the parties to proceed in the State Action. Significantly, the divorce proceeding has been pending for over six years, and the state court is intimately familiar with the parties' conditions as they pertain to the divorce proceeding and stands ready to try the case. Transferring the divorce proceeding to this Court would

Page 11
February 6, 2006

unquestionably result in wasteful delay and unnecessary expense for all parties. Finally, the divorce trial is not limited solely to the equitable distribution of marital assets, but also involves outstanding issues of alimony, support, maintenance, and custody of the parties' five children – all issues not affected by the stay. Simply stated, the state court has an acknowledged expertise in these domestic matters that is not replicated by this Court. To bifurcate the divorce trial so as to have this Court adjudicate the equitable distribution issue, but have the state family court determine all other matrimonial issues would prove unnecessarily costly to the parties and an inefficient use of judicial resources. Accordingly, Romania's motion to lift the automatic stay pursuant to § 362(d) of the Bankruptcy Code is hereby granted, and the parties are permitted to conclude the divorce action in state court. With respect to issues of equitable distribution, the state court shall determine and fix the equitable distribution award while this Court shall retain jurisdiction to apportion assets set by the state court as part of the Debtor's continuing reorganization process. Finally, with respect to Romania's tort claims against the Debtor, this shall continue in the state court up to, and including, final judgment. Judgment on that claim, if any, shall then be dealt with in the bankruptcy case.

      An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

      Very truly yours,

s/ **Donald H. Steckroth**

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure