UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693
BANKRUPTCY JUDGE  Fax: (973) 645-2606

**NOT FOR PUBLICATION**

April 18, 2006

**FILED**
JAMES J. WALDRON, CLERK

**APRIL 18, 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ Ronnie Plasner, DEPUTY

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Ravin Greenberg PC
Brian L. Baker, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
*Attorneys for Creditor Catherine Romania*

Booker, Rabinowitz, Trenk, Lubetkin,
 Tully, Dipasquale & Webster, P.C.
Mary Ellen Tully, Esq.
100 Executive Drive, Suite 100
West Orange, New Jersey 07052
*Attorneys for Debtor Nicholas A. Mattera*

**Re:**  **In re Nicholas A. Mattera**
  **Case No. 05-39171 (DHS)**

Page 2
April 18, 2006

Dear Counsel:

Before the Court is a motion filed by Catherine Romania, a creditor of the Debtor, Nicholas Mattera, seeking to quash a Rule 2004 subpoena issued by the Debtor upon Romania. Without detailing the extensive state court litigation between the parties, it is sufficient to note that for the past six years the parties have been embroiled in a heavily contested divorce proceeding in the Superior Court of New Jersey. According to the parties, a special discovery master has been overseeing the discovery process in the state court for quite some time. On September 9, 2005, Mattera filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On February 6, 2006, the Court issued an Order granting Romania relief from the automatic stay so that the parties could continue the ongoing divorce proceedings in state court. Romania subsequently filed a motion for reconsideration of the Order lifting the stay, which the Court denied on March 9, 2006.

According to the parties, the Debtor served a Rule 2004 subpoena upon Romania, which is the subject of the present motion. In support of her motion to quash the subpoena, Romania offers the following reasons for why it should be quashed: 1) virtually all of the documents requested have already been turned over; 2) the remaining documents that have not been turned over are either not in her possession or "are required to be and will be turned over pursuant to the rules of the state court"; 3) discovery pertaining to the litigation pending before the state court should be governed by the rules of that court; 4) there is no legitimate reorganization purpose for the subpoena and there is nothing that will assist in the administration of the case nor will it aid in discovering information concerning the Debtor's assets and liabilities; and 5) "the real purpose of the subpoena is to annoy, harass and discourage" Romania. The upshot to the objection is that according to Romania, the subpoena is seeking discovery for use in the state court divorce proceeding, and not for any

Page 3
April 18, 2006

valid bankruptcy purpose. As such, Romania asserts that the Debtor's Rule 2004 subpoena should be quashed in its entirety.

In opposing Romania's motion, the Debtor contends that Romania "fails to give merit to the Debtor's pressing need to obtain financial information in her possession that is necessary and critical to the Debtor's formulation of his Chapter 11 plan." Indeed, the Debtor has until May 7, 2006 to file his plan of reorganization. According to the Debtor, he "seeks information from Romania necessary to assess the quantum of marital assets, specific information regarding payments made by Romania to certain individuals and accountings and present balances of marital accounts held by Romania, all of which comprise the parties' marital estate," some of which in turn comprises the Debtor's bankruptcy estate. *See In re Becker*, 136 B.R. 113, 115 (Bankr. D.N.J. 1992) ("The filing of a bankruptcy petition creates an estate under Code section 541 which consists essentially of all legal or equitable interests of the debtor in property as of the commencement of the case. The debtor's interest in property which is jointly owned with a nondebtor spouse therefore becomes property of the bankruptcy estate upon the filing of a bankruptcy petition") (internal citations omitted).

Upon reviewing the parties' submissions, the Court will deny Romania's motion to quash the Rule 2004 subpoena in its entirety. This Court believes that the Debtor does in fact have a valid reason for obtaining financial information from his former spouse. However, Romania is not required to produce any documents that have already been provided, but again requested by the Debtor. Romania is required to update the production of documents previously made. Thus, Romania is hereby ordered to produce any

Page 4
April 18, 2006

updated information sought by the Debtor. Solely by way of example, since Romania claims to have produced tax returns through 2004, Romania is hereby directed to produce tax returns for 2005 and 2006.

Moreover, the Court concludes that the items requested in paragraph 8 of the Certification of Patricia Burris, Esq. should be produced by Romania and provided to the Debtor. It is contended that they have been produced, but both the Debtor and the Discovery Master have not been able to locate them among the documents already provided. Thus, Romania is hereby directed to produce the documents. These items are as follows:

- 2003 state and federal income tax returns;

- All documentation evidencing payments by Romania to Dr. Sharon Ryan Montgomery;

- All documentation evidencing payments by Romania to Dr. Ruth Mollod;

- All documentation evidencing payments by Romania to Dr. Hagovsky;

- All documentation evidencing payments by Romania to the DeChristofanos;

- All documentation evidencing payments, gifts or other transfers of money of any type by Romania to her mother and/or father;

- All documentation evidencing the sale price or trade-in value received by Romania for the Dodge Caravan; and

- All documentation evidencing monies being held on Romania's behalf by any third party or person.

Page 5
April 18, 2006

Further, Romania is required to produce documents. She is not required to create the "accountings" which have been requested by the Debtor. If these "accountings" do exist, she is required to produce them, but is under no obligation to create information in accounting or summary form.

Finally, the documents shall be produced by Romania within ten (10) days of the date of this decision.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached..

                Very truly yours,

                **s/   Donald H. Steckroth**

                DONALD H. STECKROTH
                UNITED STATES BANKRUPTCY JUDGE

Enclosure